Counsel for the plaintiffs, $\left\{ \begin{array}{l} \textit{S. A. Talcott,} \text{ Att'y Gen.} \\ \textit{Benjamin F. Butler.} \end{array} \right.$

                                   Counsel for the defendants, *Samuel Jones.*

                        ───────────────

                 THE PEOPLE, *ex rel.* ISRAEL, *against* TIBBETS AND
                                     OTHERS.

The 10th sec-    AFTER the preceding opinion in this case was delivered,
tion of the act
to     prevent
fraudulent       *Talcott,* (Attorney General,) upon the same papers, mov-
bankruptcies     ed to file the information under the 9th section of the " act
by incorpora-
ted    compa-
nies, and to facilitate proceedings against them, &c. passed April 21, 1825, (sess. 48, ch. 324,)
applies to an information in nature of a *quo warranto,* which the attorney general had moved
to file before the passage of the act ; but which the Court did not give leave to file till after its
passage.
    A statute altering the mode of proceeding in point of form, in a suit pending when the act
passed, so as to prevent a delay, and hasten the time of trial, is not unconstitutional.
    Such an act will be construed liberally, and general words, not expressly prospective, will
be applied to a pending proceeding.
    The rule, that a statute should not be so construed as to affect vested rights, does not apply
to a statute which alters the form of the remedy merely.
    Under the 10th section of the act to prevent fraudulent bankruptcies by incorporated com-
panies, and to facilitate proceedings against them, &c. (sess. 48, ch. 324,) the Court will make
a rule for the defendant to appear as well as to plead, &c. within a certain time without pro-
cess, on giving leave to file an information in nature of a *quo warranto,* under the 9th section
of that act.
    Form of the rule to appear, plead, &c. under the 10th section.
    Whether a suit, by information in nature of a *quo warranto,* shall be considered as com-
menced on moving to file the information, and before it is actually filed ? *Quære.*
    The Court will construe a statute strictly to prevent its interfering with vested rights.

to prevent fraudulent bankruptcies by incorporated com-panies, to facilitate proceedings against them, and for other purposes," passed April 21st, 1825, (sess. 48, ch. 325,) since the above motion in this cause was argued; and for a rule to expedite the proceedings, according to the provisions of that act.

He said the old statute had evidently contemplated a more rapid proceeding than could be had at common law. It expressly authorized the Court to require a plea from the defendant, as of the same term at which the information was filed. But the legislature saw that, in consequence of the decision at the last term in Richardson's case,(a) putting the cause back to the common law process, the pro-ceedings upon the old statute would not be sufficiently rapid to answer the purposes of justice; and, for that rea-son, immediately interfered. Perhaps, however, indepen-dent of the last statute, this Court might make the same rule against the defendants which they made in Richard-son's case,(b) on the *ex parte* application. There the de-fendant had not appeared when the rule was made which was afterwards set aside. Here the defendants have come into Court, and argued against the motion, which is a sufficient appearance for the purpose of enabling the Court regularly to make such a rule upon them, admitting we are holden to the proceeding upon the old statute.

The act of the 21st April, 1825, (sections 8 and 9,) pro-vides for two cases; one where the information is filed by direction of a single Judge in vacation, with or without no-tice of the application. In such case, on the process being returned served, the clerk is to enter the defendant's ap-pearance. Another case is, where, upon reasonable notice, a motion is made, and leave granted by the Court, in term, to file an information under the old act of 6th February, 1788. And by the 10th section, in both these cases, the Court are authorized to make rules for expediting the plead-ing; and the expression, among others, is, "to make such further order for prescribing and limiting the times for the respective parties to plead and *proceed* therein," &c. This provision extends to both cases. In the 9th section, which

NEW YORK,
May, 1825.

The People
v.
Tibbets.

(a) Ante, 91

(b) 3 Cow-en's Rep. 357

contemplates leave of the Court, there is no provision at al. for process; but within this general power of making rules as to pleading and *proceeding*, an authority to fix the time within which the defendant shall appear, and the manner of his appearing, is included. It can hardly be supposed that a summary mode of compelling an appearance should be provided, as to an information filed upon the order of a single Judge, and yet that the legislature meant to deny this where the proceeding to obtain leave was more delibe‑ rate, by notice and motion in Court.

*G. Griffin*, contra. The question is simply whether the act applies to this proceeding, which was commenced be‑ fore the statute passed. To give it such a construction would be contrary to the spirit of the constitution. It may well be doubted, how far it is competent for the legislature to pass an act like the present, so as to affect present or fu‑ ture proceedings against corporations. It looks too much like out-lawing one class of the community by a statute. Upon this point we shall not enlarge at this stage of the proceeding; but would barely ask the Court to look into *Holden* v. *James*, (11 Mass. Rep. 396.)

At any rate, this act cannot have a retroactive operation upon proceedings instituted several weeks, and, indeed, months before it passed. The general rule is certainly against this. " *Nova constitutio futuris formam imponere debet, non præteritis.*" (2 Inst. 292. Bract. lib. 4, fol. 228.) The rule is clear, where the words of the statute are general, that it shall not have a retrospection to take away rights. (*Gilmore* v. *Executor of Shooter*, 2 Mod. 310. *Couch, q. t.* v. *Jeffries*, 4 Burr. 24, 60. *Duffield* v. *Smith*, 3 Serg. & Rawle's Rep. 590. *Bedford* v. *Shilling*, 4 id. 401. *Dash* v. *Van Kleek*, 7 John. Rep. 477.) That the legislature may, in certain cases, by express words, modify or control pending proceedings, need not be denied for the present; but they have not professed to do so. Where the words are equivocal, the construction should always be against this. But by looking at different parts of the act, it will be seen that they intended to make it prospective. The attention

of the Court has been drawn by the Attorney General, to three sections only, the 8th, 9th, and 10th. But a previous section, the 4th, which relates to the civil remedy against corporations, and which abridges the proceedings in the same way as the sections relied on, is made, in terms, to embrace only *suits which should thereafter be prosecuted.* It was not deemed necessary to repeat this, in the subsequent sections relied on ; but it is plainly implied. The prospective words are to be taken as connecting themselves with the subsequent sections. The 8th section itself is, in the future tense, "that when the Attorney General *shall* proceed," &c. In the 9th section, "that it *shall* be the duty of the Supreme Court," &c. So in the 10th section, "that it *shall* be lawful for the Supreme Court," &c. Thus the general rule is fortified by the prospective words in every section relied upon. The 14th section authorizes the Court to award Supreme Court costs against the defendants, if judgment shall go against them. This is a provision penal in its nature ; and to give it effect would be violating the constitution, which forbids the passage of *ex post facto* laws.

The defendants, here, have a vested right to a certain mode of proceeding ; and to certain rights or privileges, which cannot be taken away in this manner. The penalty which they were formerly subject to, cannot be enhanced. One having a right to a penalty cannot be deprived of that right by an act of parliament, pending an action to recover it. Such was the case of *Couch q. t.* v. *Jeffries*, (4 Burr. 24, 60.)

*T. A. Emmet*, (same side.) The Attorney General admits there is a difference between a case where an information is filed under the order of a single Judge, and the case of one filed under a rule of the Court ; and we contend that the subsequent proceedings have respect to, and connect themselves with this difference. Will it be denied that a suit was commenced at the last term ? Can it be doubted that the cause was so far pending as to give application to the rule that the statute shall not act prospectively ? Who can say, that had we known of this statute, we should have appeared to the motion. That we should not

rather have put the Attorney General to the process required by Richardson's case ? It is obvious from the 9th section, that the late statute did not mean to repeal the law of 1788. That law is referred to by this section, as still existing in all its branches, and among other things, for the purpose of the proceedings. The object of the late statute was merely to provide for a new case. In February term, the proceeding was completely within the statute of 1788. At the present term, the Conrt delivered their opinion. In the mean time, an act passed making it, perhaps, a matter of regret that we appeared at all. Should not the order made at the present term relate to the last, and be considered as made then ? To deny the application of the late act to this proceeding would, at. least, be a judicious exercise of the discretion which the Court are called upon to exert, and which they always have power to exert upon the proceedings on the information, as well as whether it shall be filed.

It was necessary that the Attorney General should have power to file the information in vacation. This is the case provided for ; and the legislature intended to leave informations granted in term time, which proceed under the act of 1788, to be entirely regulated by that act. Wherever the word *information* occurs in the late act, it means an information filed under its own special provisions. The power to give preference and expedite other proceedings refer to an information thus filed. The act should be construed strictly.

The 9th section introduces a proceeding in which the right to a trial by jury is forgotten to be a part of our constitution. True, it gives an issue, which we trust will never be denied. The Court may decide summarily, direct an issue, or grant leave to file an information under the act of 1788. Then comes the 10th section regulating the proceedings. This is, " that it shall be lawful for the Supreme Court, in case any *such* issue shall be ordered, or any *such* information directed," &c. to make order for expediting the proceeding. This evidently refers to one of the two previous modes, viz. a summary proceeding, or an issue directed.

*S. Jones,* in reply. The two statutes, being in *pari ma-*

*teria,* are connected by their very nature. We have a right to go on under the old act, and apply the new one to. The Court will hardly pass upon the constitutionality of a law in this summary way, but refer the question to a subsequent stage of the proceedings, when it can be more deliberately and formally considered in a shape which shall give the party, thinking himself aggrieved, a remedy on error.

Suppose the suit to have been commenced at the last term, we deny the want of power in the legislature to interfere; and we deny the rule that general and comprehensive words, embracing the case, shall be construed to steer clear of the proceeding. The rule is, simply, that a statute shall not be so construed as to vary antecedent vested rights; but was it ever before heard, that an act could not be passed applying to the mere form of a pending suit or proceeding? This is done every day. The legislature may give a new rule which shall entirely alter the course of proceeding. Nay, the Court itself, without legislative authority, may do the same thing. It is mere matter of practice, invading no right, interfering with no privilege; and *Couch, q. t.* v. *Jeffries,* cited from 4 Burrow, 2461, goes upon this distinction. The word *hereafter,* relied on, is in the 4th section, entirely independent of those we rely upon, and relates to a distinct proceeding; the civil remedy for a debt. There is not the least ground for saying that it should be read in connection with the 8th, 9th and 10th sections. When the legislature come to a different class of cases, they use different words, having a present import.

The statute had two different objects in view. The 8th section relates to corporations, the 9th to the officers of corporations. It should be so construed as to suppress the mischief and advance the remedy; and every statute to prevent delays in the administration of justice is to be liberally and beneficially applied. Then the 10th section confers the fullest and most ample powers to hasten the proceedings whenever any information is filed.

In *Duffield* v. *Smith,* (3 Serg. & Rawle, 590, 598,) an act passed after an action of trespass brought, was sought to be

NEW YORK, so construed as to divest the right. This was denied; be-
May, 1825. cause the right was vested. It was a matter of right, not
The People of mere form. The case of *Bedford* v. *Shilling*, (4 Serg.
v. & Rawle, 401,) went upon the same distinction.
Tibbets.

The Court may not only make a short rule to appear and plead, but may make a rule as to all the subsequent pleadings and proceedings bringing them within a shorter time than usual, so as to effectuate the intent of the legislature in making the remedy as speedy as possible.

The last day of term, (SUTHERLAND, J. being absent,)

WOODWORTH, J. said all the members of the Court had examined the statute and the questions submitted upon it, and were unanimous that the motion must be granted. The remaining Judges were authorized to say, that Sutherland, J. (who had this morning departed for his residence) unhesitatingly concurred in this opinion. The Court had adopted no written opinion; but he would briefly state the views they entertained upon the subject.

The Court had thought it a proper case for an information; according to an opinion which they had expressed at the present term, upon papers submitted at the last; and the relator now applies, upon the statute since passed, for a rule that the defendants appear; and he also moves that the Court should make a short rule for pleading, in order that an issue may be speedily joined. The act of 1788, declared upon what terms an information should be filed; but left the proceedings upon it to their usual and ancient course. The only provision in that act expressly hastening the proceedings is in the first section, which enables the Court to require the plea as of the same term at which the information should be filed. This indicated an intention that a case of this kind should be proceeded in with more than ordinary diligence; but the provision was inadequate to the object, inasmuch as it left the preliminary steps, the process to compel the defendant's appearance, to be pursued according to the rules of the common law; a proceeding so dilatory as to render the suit in many cases altogether inefficient. This was held to be the course, at the last term, in Richardson's case, (ante 97,) after a full examination of the subject.

The authorities spoke so plain a language as left the Court no room for doubt. The act now in question was obviously passed to remedy this defect. There cannot be a question that it applies to all informations filed against corporations or their officers; and the only question which can arise is, whether the act is to be deemed so entirely prospective as to steer clear of the present case. The defendants insist that it is so; and ground themselves mainly upon the argument, that a contrary construction would take away vested rights.

It is also said, that this construction is deducible from the language of the 4th section, which is prospective in terms. This is true of that particular section; but it was well answered at the bar, that it relates entirely to a distinct subject, and that the sections relied upon are altogether disconnected with, and independent of it; that the former relates to the civil, the latter to the criminal remedy against corporations, and the plain difference of expression by the legislature, in relation to these different subjects, is a strong argument against the construction for which the defendants contend. The legislature thought it rather too severe and rigorous a proceeding to change the course of the civil remedy for debt, in suits already brought; and hence they made it expressly prospective. Not so as to a proceeding for intrusion or usurpation.

It is not necessary to inquire whether a suit might properly be said to be commenced, when this motion was made. The information was not yet filed; and it may well be doubted whether it is perfectly correct, in technical meaning, to say that before process issued, or even an information filed, which is in the nature of a bill or plaint, that an action is commenced. Admitting, however, that it was commenced, for all the purposes of this question, there is no invasion of private right in the case within the rule which struggles against giving statutes a retroactive effect. The words of the 9th section are, that it shall be the duty of the Supreme Court, upon the application of any person, or persons, or body corporate, &c. to proceed forthwith, and in a summary way, &c. to inquire as to the election complained

NEW YORK,
May, 1825.

The People
v.
Tibbets.

of, &c. order an issue, &c. or direct the Attorney General to file an information under the act of 1788. Then the next section is, that it shall be lawful for the Supreme Court, in case any such issue shall be ordered, or any such information directed or permitted to be filed, to make order for prescribing and limiting the times for the parties to plead and proceed therein, for giving preference to the issues, and for expediting the ulterior proceedings, so as to cause the same to be proceeded upon, and the final determination thereof to be had with the best and most convenient speed that may be, and to cause the same to be expedited by all such ways and means as a due regard to the ends of jus tice will admit, and the case may require.(c) This applies to all cases, whether any incipient proceedings may have taken place before the passage of the act or not. Whenever the relator comes forward with his application, at whatever stage of the proceedings, he may have the benefit of the act, by the expedition of his case as its exigency, and the ends of justice may demand. The act looks to the end of the term for which the offices endure. In respect to corporations, this term is usually a single year, and without a speedy hearing the suit will be entirely nugatory.

If it were true that the statute interfered with vested rights, the Court would feel bound to give it the very strictest construction; but there is no such thing. What right is taken away? Are the defendants divested of their defence upon the merits? Their saying that the proceeding is hastened in point of form makes nothing for them. They have no right to complain of this. It is complaining that he is put upon his defence to-day, whereas he had a right to delay till to-morrow; a singular head of vested right: *a right to delay justice.* Are not the legislature competent to take away, or abridge such an evil? It is most important that they should possess this power. The pretence of the defendants does not merit the name of *right.* It relates to the *remedy.* The act merely says that, under its regulations, the questions between the parties may, peradventure, be brought to trial

(c) See a summary of the act, so far as it relates to proceedings on informa-tion in the nature of a *quo warranto*, ante 122, note.

six months earlier than they otherwise would have been. This is a very usual subject of legislative interference. Indeed, as was said at the bar, the Court might do the same thing independent of the legislature. Suppose they were to make an order that all rules to plead should be 10 days instead of 20, would it lie with the parties interested to gainsay this? The legislature are in the habit of changing the form of proceeding, to try rights, in various ways. Take a single instance. Ejectment may now be brought for the people instead of the former more dilatory form of a writ of escheat or intrusion. The former is much the more summary remedy, and was itself instituted by the Courts, and applied to various cases where a more dilatory form prevailed according to the ancient practice. This remedy was given to the people by an act of the legislature, (1 R. L. 485, s. 5,) which act, too, sanctioned ejectments pending at the time of its passage. Would it be competent for defendants in possession, or against whom ejectments were brought, when that act passed, to object that the remedy against them was thus made too speedy, and demand to be proceeded against by the old writ? To complain that the alteration hurrying them on to trial was a violation of the constitution, or of vested rights? At this rate, every statute by which the collection of debts or the trial of rights is rendered more speedy, or effectual, would 'be inapplicable and void in reference to subsisting rights. We are clear that short rules for pleading should be granted.

It is true that nothing is said in the act as to compelling an appearance, where the proceeding is against officers. The right to make a rule for the defendants to appear, depends upon the construction which should be given to the words of the 10th section. The power of the Court is, not only to make rules for pleading, but rules to *proceed ;* and the whole is to be done so as to cause the matter to be proceeded upon, and the final determination thereof to be had, with the best and most convenient speed that may be. The Court are to cause the same to be expedited by all such ways and means as a due regard to the ends of justice will admit, and the case may require. If the act

NEW YORK, meant to confer no summary power of compelling an ap
May, 1825. pearance, it would use a most inconsistent language.
Snyder   This department of the proceedings in which the greatest
v.   delay must intervene, would be wholly unprovided for·
Snyder.  The intention of the act must have been, that the cause
should be put in such a situation, as would enable the re-
lator to proceed immediately.

The Court order the following ·

RULE : That the Attorney General have leave to file an
information or informations, in the nature of a *quo war-
ranto*, under the act entitled "an act to prevent fraudulent
bankruptcies by incorporated companies, to facilitate pro-
ceedings against them, and for other purposes," passed
April 21st, 1825, against Elisha Tibbets, &c. to try by
what warrant, or authority, the said last named persons,
or any of them, claim to hold and exercise the office of
directors of the Franklin Fire Insurance Company.   And
it is further ordered, that, within 20 days, after filing such
information and notice thereof to the defendants, the ap-
pearance of the defendants be entered in the book of com-
mon rules; and that the defendants plead to the said
information or informations within the same time; and
further, that all subsequent pleadings, if any, on the part of
the defendants, shall be served within ten days after service
upon them of the pleading to be answered; and if the de-
fendants shall neglect to plead, or answer, within the times
above limited, their defaults may be entered; and there-
upon, judgment of ouster shall be given against them, or
such of them as make default upon motion to be made to
this Court; unless such defaults are set aside.

