## SUPREME COURT.

WILLIAM B. LITCH, respondent agt. JOHN BROTHERSON, appellant.

Where the action was properly *referred* to a referee at special term in December, 1861—on the 10th of March, 1862, the case was heard before the referee and *submitted* on that day by the parties, and on the 29th of March the referee wrote a letter to the defendant stating that he had decided the action, and that upon the receipt of his fees he would send him his report; and subsequently, at the request and on application of the plaintiff, the referee consented to hear a *reargument* of the case, and granted an order appointing the 21st of May, 1862, for that purpose; on that day the parties appeared, and upon the application and request of the defendant the reargument was postponed to the 31st of May, on which day the parties again appeared and reargued the case before the referee, and it was on *that day finally submitted* to him:

*Held,* on a motion made by plaintiff, a notice of which was served on the defendant on the 11th of August, 1862, for the appointment of a *new referee,* and to *set aside a report of the referee dated the 29th of March,* but which appeared not to have been *signed, delivered nor filed until after the plaintiff's motion papers had been served,* that the cause must be considered as *finally submitted* to the referee on the 31*st day of May,* and that the amendment to § 273 of the Code, which became and took effect as a law on the 13th of May, 1862, *applied to the case.*

It was therefore ordered that the report of the referee be *set aside,* not having been " *made and delivered within sixty days from the time the action was finally submitted,*" and that a new referee be appointed.

*Saratoga General Term, May,* 1862.

POTTER, BOCKES and JAMES, *Justices.*

THIS was an appeal from an order made at special term upon two motions in the same action; one to set aside the report of a referee ; the other for a re-reference of the action. All the facts will sufficiently appear in the opinion.

The opinion of Judge BOCKES at special term in September, 1862, is herein inserted.

BOCKES, Justice. On the 19th August, 1862, the plaintiff moved before me, at special term, for an order referring the action to Mr. Wells, as referee, to hear and determine. He moved on an affidavit, which stated that the cause had been referred to Mr. Lewis ; that it was tried and finally submitted to him on the 31st day of May, 1862, and that he had not yet decided it. It was also further stated in the moving affidavit, that the trial of the action would require the examination of a long account.

The motion was based on the amendment of section 273 of the Code, passed April 23, 1862, which declares that unless the court shall otherwise order, the referee or referees shall make and deliver his or their report within sixty days from the time the action shall be finally submitted, and on default thereof the referee or referees shall not be entitled to receive any fees, and the action shall proceed as though no reference had been ordered.

In answer to this motion, Mr. Brotherson read affidavits showing that the referee, Mr. Lewis, had decided the action and delivered his report, which was filed in the clerk's office. In his affidavit Mr. Brotherson states that " he had paid him" (the referee) " his fees, and took up the report, which is duly signed and in writing, and bears date the 29th day of March, 1862, and filed the same with the county clerk of the county of Saratoga, in his office."

This was of course an answer to the motion to refer, as the record showed the case already determined.

Thereupon the plaintiff's attorney made an affidavit, stating that he had just learned of the delivery of the report; that the motion papers on the motion to refer were served on Mr. Brotherson on the 11th of August then instant, and that, as he believed, the report of the referee had been obtained and filed since such motion papers were served. On this affidavit, as well as on the papers read on the motion to refer, plaintiff moved before me, at special term, on the 16th September, 1862, for an order setting aside the report for irregularity, and as void. In the mean time I had held the motion to refer in abeyance. Thus both motions are now before me, and will be considered together as one motion—a motion to set aside the report of the referee and to appoint another in his place.

The motion depends on the question when the case was finally submitted to the referee for decision.

The plaintiff's attorney swears that it " was finally submitted to said referee on said 31st day of May last." He produces an appointment by the referee, of that day at ten o'clock, for the reargument of the case before him. It appears from the affidavits of both sides, that the parties appeared on that day before the referee, and reargued the cause.

There is no direct denial, or denial in terms, of the

allegation that the case was then finally submitted. Neither the referee in his affidavit, nor Mr. Brotherson in his, denies that statement. The referee says he decided the case in favor of the defendant, about the 20th March; that on request of Mr. Bullard he opened it for reargument; that the case was reargued, but the reargument did not alter his mind. This statement of the referee supports the allegation that the case was finally submitted on the 31st May. It shows that he opened the case for reargument; that the reargument was had.; that he reconsidered the subject, but did not change his mind. The purpose for which the case was opened was answered. The reargument was had; of course it would then be deemed closed—finally submitted. This would be the necessary, the inevitable conclusion, as the question stands on the moving papers taken in connection with the affidavit of the referee.

Do the affidavits of Mr. Brotherson change the case? As has been before remarked, he does not deny expressly or in terms that the case was finally submitted at the time of the reargument on the 31st May. He states what the referee said; that is, he says : " The referee told E. F. Bullard, on the hearing of the reargument of the cause, that he should not consider the case as opened for a reargument, unless he paid $10. He did not pay the $10, as deponent is informed by the referee, and as he believes true. But said referee informed deponent that he had reconsidered the matter after hearing the reargument, and that his mind was not changed by the argument." Again, in Mr. Brotherson's affidavit, sworn to Sept. 15th, he says: " That on the reargument of the case before John Lewis, the plaintiff was informed, and also E. F. Bullard, his attorney, by the referee, that unless he was paid $10, the case would not be opened or reconsidered by him. The case or reconsideration was then held in suspense, and neither said Bullard nor said plaintiff has

paid said $10 to the referee, as deponent is informed and believes true. The referee informed deponent, however, that he had reconsidered the case, but had not changed his decision."

From this it would seem that the referee made the payment of $10 a condition, on the performance of which, and not before, he would regard the case as opened. If this was the condition of the case, and the $10 were never paid, (and it seems they never were,) then the case stood finally submitted long prior to May 31st, and the effect on this motion is the same, whether the submission was on the 31st May or at some time prior to that date. But there is no direct allegation that the payment of $10 was made a condition of opening the case for reargument. The appointment of the 31st, which was in the nature of an order for reargument, contained no condition. The referee says, that on request, *he opened* the case for rearment, and that it was reargued, but his mind was not changed. The case was, then, *opened* for reargument— that is beyond dispute. It was reargued, and thus became closed ; not by the payment of the $10, but by the reargument.

The fact stated by the referee, that his mind was not changed by the reargument, in connection with the statement made by Mr. Brotherson that the referee informed him that he had *reconsidered* the matter after the reargument, shows either that there was no condition originally, or that it was waived.

I am forced to the conclusion that the case was finally submitted to the referee on the 31st May. It must be deemed to have been submitted at some time, for he has made and delivered his report. The parties have never met before him in the cause since the reargument.

When did the defendant submit the case on his side, if not on the reargument on the 31st May ? When did it become a case submitted before the referee, at which

time it was proper for him to enter upon its reconsideration? If not on the 31st May, the defendant was called upon to show at what other time it was submitted. Was not the referee at liberty, on any day after the reargument, to examine and decide the case? Of this I think there can be no doubt. If so, the case was before him on final submission. He was then bound, (*Code*, § 278,) there being no order to prevent an extension of the time, to "*make and deliver his report*" within sixty days thereafter, or, in default thereof, the action was to proceed as though no reference had been ordered. The statute is very plain and explicit. It is suggested that in this case the report was made and ready for delivery at all times after its date, the 29th of March. But the language of the act is, that he shall make and *deliver* his report within sixty days from the time the action shall be finally submitted.

In this case the report was not delivered until after the 11th day of September, more than sixty days after the case was finally submitted for decision. It is so charged in the moving affidavit, and the charge stands undenied. The report was therefore unauthorized, and must be set aside.

I have examined the case to see if there was not a waiver of this statutory provision by the plaintiff; but I am unable to find any ground for it.

For aught that appears, the report of the referee is justly and fairly made, after great labor and expense in the cause, and I regret the necessity which compels me to direct it to be set aside. But there is, as it seems to me, no alternative. The case, as I understand it, is brought directly within the provision of the law.

There is no question about the case being a proper one for a reference. The order setting aside the report will also designate a person as referee to hear and determine the action, in the place of the former referee.

An appeal was taken by defendant to the general term.

E. F. BULLARD, *for the plaintiff.*
JOHN BROTHERSON, *in person, defendant.*

By the court, POTTER, Justice. The action was referred at special term in December, 1861, to a referee, to hear and determine the issues. On the 10th March, 1862, the case was heard before the referee, and submitted on that day by the parties. On the day of submission the defendant asked permission, which was granted by the referee, to furnish the referee, within one week, with legal points; he was also, by the agreement, to furnish the plaintiff's attorney with a copy of his points so to be sent to the referee. The defendant sent points to the referee, but sent no copy to the plaintiff's attorney. On the 29th March, 1862, the referee wrote a letter to the defendant, stating that he had decided the action, and that upon the receipt of $60 (his fees) he would send him the report. On the 27th March, two days prior to the date of this letter, the referee showed the plaintiff's attorney the defendant's points, and requested plaintiff's attorney to answer them. The plaintiff's attorney promised to do so, and subsequently sent points in answer. After this, the plaintiff's attorney heard of the letter which the referee had sent to the defendant; he went to the referee to ascertain; obtained the referee's consent to hear a reargument of the case; got an order of the referee to that effect appointing the 21st May thereafter, at Ballston Spa, for the rehearing. On that day the parties appeared, and, upon the application and request of the defendant, the reargument was postponed to the 31st day of May, then instant, at Mechanicsville; at which time the parties again appeared and reargued, and the referee reheard the case, and it was on that day finally submitted. On the 1st of August, 1862, the referee informed the plaintiff's attorney that he had not then decided the case. On the 9th day of August, then instant, the plaintiff's attor-

ney gave notice to the defendant of a motion to be made on the 19th day of August, then instant, at special term before Justice Bockes, for a reference of the case to another referee to be appointed. On the day of that motion, and in opposition thereto, the defendant read an affidavit showing that the referee had signed a report in the case, as referee, dated the 29th March, 1862, and that such report had been filed with the clerk of Saratoga county.

Whereupon the judge at special term granted an order staying proceedings upon the report of the referee, to enable the plaintiff to make a motion to set aside the said report. And a day was then appointed to hear that motion, and the pending motion was postponed to be further heard at the same time. Upon the hearing there was some conflict of facts; they were, however, judiciously and correctly passed upon by the judge. The result was, that the referee had delivered no report till after notice of the motion for a re-reference, though its date is prior to the final submission on the 31st May, 1862, and even prior to the order made by the referee for a reargument of the case; and no report was ever made or delivered by the referee subsequent to the submission on the said 31st day of May.

The order appealed from was made at special term upon both motions; and the question to be decided depends upon the effect of the provisions of the act of 23d April, 1862, which is an amendment of section 273 of the Code, chap. 460, relating to references, and which is in the following words: " Unless the court shall otherwise order, the referee or referees shall *make and deliver* his or their report within sixty days from the time the action shall be finally submitted, and on default thereof the said referee or referees shall not be entitled to receive any fees, *and the action shall proceed as though no reference had been ordered.*" This act took effect on the 13th May, 1862, twenty days after its passage. There is nothing in the

language of the act to change the usual construction to be given to a statute, that its provisions are prospective in effect. This act was not in force when the case was submitted to the referee on the 10th March, 1862. If the referee had then signed the report and given notice to the parties, or to the defendant in whose favor he said he had decided; or if the report signed was in fact signed at its date, and notice given to the parties, the referee would have had no further power over the case. (*Ayrault* agt. *Sackett*, 17 *How. Pr. R.*, 508.) But the papers do not show that the referee had signed a report prior to the time of the taking effect of the amended staute of 1862; on the contrary it quite clearly appears that he did not, and it was so found at special term. The referee granted an order for a rehearing on the 21st May. This was not only after the date of the report, but after the new statute had taken effect as the law. The defendant then appeared, recognized the referee's power, and himself asked for a further postponement. He appeared at the adjourned day; again recognized the authority of the referee; again argued, and again submitted his case. If we could even now review the finding of the special term, could we believe that a party who then had a report in his favor which secured to him all he desired, would have consented to a reargument and a resubmission, whereby he put at hazard what he was then secure of? Is it probable, in the natural course of things, that the referee, who is a counsellor at law, would have granted an order for a reargument of a case over which he had lost all power by signing a report and giving notice? If the letter of the referee to the defendant could be deemed an official act, it was, *not* that he had signed a report, but that he had *decided.* If the referee meant by *deciding*, a mere intangible, inchoate conclusion of the mind—a thing existing in idea only, disconnected from judicial action, such as signing a written report of the decision—the case

was susceptible of being continued, reheard, opened or waived by the referee and parties, and was not conclu-sively, legally decided. There remains no doubt, there-fore, of the power of the referee to grant a reargument., Besides, the subsequent action of the referee in the case, by the consent of the parties, and the consent and action of the parties themselves in the subsequent adjournment and reargument,' estops them all from denying, as was found by the special term, that the final submission of the case to the referee was on the 31st May, 1862. A report of the referee dated before that day was therefore properly set aside. The date of this last submission being after the taking effect of the amendment of the Code, of 1862, the only question left in the case is : does this amendment apply to a case, the order of reference in which was made and the trial begun before the act took effect, but the final submission in which was after the law was in force ?

We have already alluded to the general rule of constru-ing statutes as operating only prospectively, unless the language of the enactment otherwise declares, and more especially if a retroactive effect would take away or im-pair a right that has once become fixed or vested. (*Dash* agt. *Van Kleeck*, 7 *John.*, 486 ; *Sayre* agt. *Wisner*, 8 *Wend.*, 661.) But it is an equally sound rule of construing sta-tutes which only affects the mode of proceedings in suits, that is, that affects the practice only,—the new practice is to be pursued as far as practicable, without affecting the rights of parties. (*Aymer* agt. *Gault*, 2 *Paige*, 284.) And it has been held that a statute, to expedite litigation or to prevent a delay of justice, is a remedial statute, and should be made to apply to pending proceedings. (*People* agt. *Tibbetts*, 4 *Cow.*, 384.) I am not able to see in this case that any legal right of either party has been taken away by this amendment, or by the construction given to it by the special term. A delay of justice can

never be regarded as a vested right in any one.   The act in question relates only to the remedy.   It hastens the proceeding.   It affects no right of the defendant to set up any defence that existed before.   I think the court had the power, before the statute in question, to have done the same thing in an order that this statute directs. After the day when this new statute took effect, the 273d section of the Code was made to read as we have above quoted it.   After that day it did not read otherwise.   No intent is apparent in its language that two systems of practice in that regard should exist.

The order of the special term was right, and must be affirmed, with costs.