Charles B. Rounds, Petitioner, *vs.* Ephriam K. Smart.

Ignatius Sargent, Petitioner, *vs.* Joseph Wilder, Jr.

Robert F. Campbell, Petitioner, *vs.* Henry L. Watts.

### Washington.    Opinion August 19, 1880.

*Stat. 1880, c. 198.    Vested rights.    State canvassing board—duties of.    Election returns, correction of.    Stat. 1877, c. 212.    Ward officers.    Title to office.*

A suit under stat. 1880, c. 198, is in the nature of a proceeding in equity. When the petition is made returnable in term time, the justice holding that term is the justice having jurisdiction. It is not necessary that the petition allege that the petitioner was eligible to the office to which he claims to have been elected. It is sufficient if it alleges that the petitioner was lawfully elected to that office.

Vested rights are not impaired by stat. 1880, c. 198. That statute only provides a new process to determine the rights of parties — a speedy remedy for the redress of a grievous wrong.

The Governor and Council, as a canvassing board, are bound to obey the requirements of stat. 1877, c. 212. That statute does not violate any of the provisions of the constitution. The same power which creates a canvassing board may determine the limits within which it may act, and prescribe its rules of action.

Where the return of votes is defective by reason of any informality, for instance, for want of the signature of the city clerk, and a duly attested copy of the record is offered as a substitute, the canvassing board are under a legal obligation to receive the substitute.

The same authority, which required them to receive and act upon the record first furnished, requires their action upon the corrected and substituted record. The will of the legislature is expressed with equal clearness in each case.

Ward clerks in cities hold their offices until their successors are chosen.

An election will not be vitiated because one of the officers of a ward was not sworn.

The title to an elective office is derived from the popular expression at the ballot box. It is the manifest duty of all holding official positions, to give full effect to the will of the people as thus expressed.

Appeal from the judgments upon petitions under stat. 1880, c. 198.

The petition of *Charles B. Rounds* v. *Ephriam K. Smart,* related to the office of county attorney for Washington county; *Ignatius Sargent* v. *Joseph Wilder, Jr.,* to the office of county treasurer for same county; and *Robert F. Campbell,* v. *Henry L. Watts,* to the office of county commissioner. The respondents

joined in the appeal, severally appealing from the several judgments, and the three cases were heard together.

*E. B. Harvey,* for the petitioners, cited : *Lovell* v. *Farrington,* 50 Maine, 239 ; Opinion, 25 Maine, 569 ; Brightly's Election Cases, 381, 382, 383, n. and cases cited, 436, 437 ; *People* v. *Vail,* 20 Wend. 12 ; *Com.* v. *Co. Comr's,* 5 Rawle, 77 ; *People* v. *Van Slyck,* 4 Cow. 297 ; *People* v. *Ferguson,* 8 Cow. 102 ; 1 Brewst. 69 ; 43 Pa. St. 384 ; 17 Ark. 407 ; 45 Mo. 453 ; High on Ex. Rem. 638.

*E. K. Smart,* for the respondents.

By the statute under which these petitions are brought, the justice of this court who orders the notice, is the one and only one before whom they should be returnable—the only one who has jurisdiction. The petitions for that cause should have been dismissed.

The petition should allege and the evidence prove the eligibility of petitioner. The statute of 1878 says, "no person ineligible shall be declared elected." The petitioner neither alleges nor proves that fact.

The whole matter of election is controlled by the constitution and laws *in existence at the time the election is called and held.* The determination of the election to the offices in question, is left by the constitution and laws with the executive branch, with no right of appeal to any other tribunal. (See 3 Maine, 477, 484.) Opinion, 25 Maine, 567. The Governor and Council could not go behind the returns.

The respondents were duly certificated, and qualified and entered upon their duties. The rights thus vested and enjoyed the petitioners claim are affected, impaired and destroyed, not by any law in existence on the day of the election nor at the commencement of their several terms of office, but by a law passed March 6, 1880. (Stat. 1880, c. 198.) That law in its application to past events is unconstitutional. 23 Maine, 308 ; 2 Maine, 275 ; 3 Maine, 326.

The return from the city of Calais was defective and could not be counted by the Governor and Council. See opinion of the

court, 68 Maine, 587, upon defective returns. See also 64 Maine, 590 ; Opinion of January 3, 1880, (70 Maine.)

Throwing out Calais the respondents were elected.

APPLETON, C. J.   This is a proceeding under c. 198 of the acts of 1880, being " an act providing for the trial of causes involving the rights of parties to hold public offices," in which the petitioner claims that he has been elected county attorney for the county of Washington, and that the respondent has unlaw-fully and wrongfully usurped that office and prevented him from holding and exercising the same.

Numerous objections are made to the petitioner's right to maintain this process.

1. The suit is in the nature of a proceeding in equity.   By the statute it is " to be commenced by petition, returnable before any justice of the Supreme Judicial Court, in term time or vacation in the county where either of the parties resides or where the duties of such office are to be performed," &c.   The petition was made returnable at the April term, 1880, of the Supreme Judicial Court, to be holden at Calais in and for the county of Washington. The notice ordered was such as is usually given in equity cases, and it was duly served.

The objections taken are that the justice holding the April term had no jurisdiction, and that the time of hearing was not indorsed on the petition, and for these causes it was moved that the petition should be dismissed.

This motion was overruled and properly.   The petition was made returnable in term time.   The justice holding that term, is the justice having jurisdiction.   The time of hearing was the term at which the petition was made returnable, and that was stated in the order of notice and indorsed on the petition.

2. It is urged that the petition does not state that the petitioner was eligible to the office to which he claims to have been lawfully elected.   The petitioner alleges he was lawfully elected to the office in controversy.   The petition follows the precise words of the statute, which was enacted to protect the rights of such as were lawfully elected.   If the petitioner was so elected he is within the words and spirit of the act.

3. The point is taken that by this act vested rights are impaired. But such is not the case. There is no vested right in an office, which the legislature may create or destroy, as it judges most consonant to the public interest. This was settled in *Farwell* v. *Rochland*, 62 Maine, 296, in accordance with the decisions of the highest tribunals of the several states where the question has arisen. Such, too, was the conclusion to which the Supreme Court of the United States arrived in *Butler* v. *Pennsylvania*, 10 How. (U. S.) 403.

This act only provides for a new process to determine the rights of parties. The rules of evidence remain unchanged. Before, as after its passage, the rights of the parties litigant are determined by the greater or lesser number of votes they respectively receive.

But there can be no vested right in any particular mode of procedure. The forms of process are subject to legislative discretion. The object of this particular change was two-fold— to give a summary remedy to parties aggrieved and to diminish the expenses of litigation by accomplishing by one process what before required two processes—both dilatory and expensive— the writs of *quo warranto* and *mandamus*. But what right is taken away? As was well said by WOODWORTH, J., in *The People* v. *Tibbetts*, 4 Cow. 384, in reference to a statute passed for a similar purpose: "Are the defendants divested of their defence upon the merits? Their saying that the proceeding is hastened in point of form makes nothing for them. They have no right to complain of this. It is complaining that he is put upon his defence to-day, whereas he has a right to delay till to-morrow; a singular kind of vested right; *a right to delay justice*. Are not the legislature competent to take away or abridge such an evil? It is most important that they should possess this power. The pretence of the defendants does not merit the name of a *right*. It relates to the remedy." In the case cited, the act applied at once to all suits. So in New Hampshire, the rules of evidence were changed, but it was claimed that the change did not affect pending suits, but the court in *Rich* v. *Flanders*, 39 N. H. 304, held that no one could acquire a vested right in the

testimony of a particular witness, or in its exclusion. In *Ewing* v. *Filley et al.* 43 Penn. 384, a statute like the one under consideration, passed for the purpose of expediting decisions in cases of contested elections, was held constitutional. All this statute does is to provide a speedy remedy for the redress of a grievous wrong.

4. The office of county attorney is the creature of the legislature. It exits only by virtue of the statute, which fixes its tenure, prescribes its duties and determines its compensation. Whether the office shall be holden under appointment of the Governor and Council or by election are alike matters dependent on the legislative will. So, that will may change its duties, diminish its compensation or repeal the statute by force of which alone it exists, and no vested rights will thereby be impaired.

In 1845 in answer to inquiries proposed by the Governor as to the powers of the Governor and Council as a canvassing board in relation to county officers, this court in their answer held that they should not receive any other evidence in relation to the votes, than what the certificates so prepared, transmitted and received according to the constitution may contain. 25 Maine, 568. In other words, that they were limited to what should *appear* of record.

At that time, the statute of 1842, c. 3, was in force by which it was provided that the votes to be collected in the different towns, for the choice of county officers "shall be received, sorted, counted and declared in like manner as the votes for representatives," that is, as is provided in the constitution as to those officers. This decision was in strict accordance with the then existing statute, and has ever been followed by this court while that statute remained in force.

But since the opinion of this court in 25 Maine, 568, the statute on the subject has been materially changed. So that the opinion is entirely inapplicable to the statute law now in force.

By c. 212 of the acts of 1877, enacted to amend R. S., c. 78, § 5, as amended by c. 62 of the public laws of 1876, it is provided that "the Governor and Council on or before the first day of December in each year, shall open and compare the votes

so returned, and may receive testimony on oath to prove that the return from any town does not agree with the record of the vote of such town in the number of votes, or the names of the persons voted for, and to prove which of them is correct; and the return when erroneous may be corrected by the record.  .  . But, in order to ascertain what persons have received the highest number of votes, the Governor and Council shall count and declare for any person all votes intentionally cast for such person, although his name upon the ballot is misspelled or written with only the initial or initials of his christian name or names; and they may hear testimony upon oath, in relation to such votes, in order to get at the intention of the electors, and decide accordingly.  .  . In all cases where a return is defective, by reason of any informality, a duly attested copy of the record may be substituted therefor."

This act is in terms made applicable in determining the election of all county officers. The Governor and Council as a canvassing board are bound to obey its requirements. They cannot do otherwise without a manifest violation of law. Nor can it for a moment be pretended that this statute violates any provisions of the constitution. The same power which creates a canvassing board may determine the limits within which it may act and prescribe its rules of action.

That the canvassing board is not a judicial body, and that in election cases the contestants for elective county offices may have their rights determined by appropriate processes, was fully settled in *Prince* v. *Skillin*, (*ante*, p. 361,) and the cases there cited. The decision of the canvassing board, is only *prima facie* evidence, and not conclusive in direct proceedings to try the right by *quo warranto*. "But," remarks BRONSON, J., in *The People* v. *Vail*, 20 Wend. 12, "to hold it conclusive in this proceeding (*quo warranto*) would be nothing less than saying that the will of the electors plainly expressed in the forms prescribed by law, may be utterly defeated by the negligence, mistake or fraud of those who are appointed to register the results of an election."

5.   By the tabulation of the Governor and Council, the votes of seven towns were thrown out by them acting as a canvassing board.   But no objection is now taken to their being counted and no reason shown why they should not be counted, save in t' case of Calais.   It would seem to be conceded, that with exception named, they were wrongfully thrown out.   Indeed, the respondent in the tabulation presented by him, places his right to the office in question upon the exclusion of the votes of Calais, admitting thereby, that if the vote of that city is counted, the the petitioner is undoubtedly elected.

The return of the votes of the city of Calais, was in due form, save that it wanted the signature of the city clerk.   It could not be legally counted without his attestation.   68 Maine, 587. But by the act of 1877, (c. 212,) subsequently passed,* it was provided that "in *all* cases when a return is defective, by reason of any informality, a duly attested copy of the record may be substituted therefor."   The evidence shows that a corrected copy of the record duly authenticated was offered, but the canvassing board declined even to receive it.

This statute is of the highest equity.   The will of the people should not be defeated by the negligence or fraud of municipal officers.   If their error or mistake is not correctible, any town clerk, by omitting intentionally his signature, might nullify the votes of his town without possibility of correction.   The corrected copy should have been received.   The canvassing board were equally under legal obligation to receive the substituted as the original, but defective record.   The same authority which required them to receive and act upon the record first furnished, required their action upon the corrected and substituted record.   The will of the legislature is expressed with equal clearness in each case.

But whether the canvassing board were bound to receive and act on the substituted copy or not is immaterial, for it is properly in evidence before us.   It is conceded, that, if not impeached, it establishes the fact of the petitioner's election to the office claimed for taking defendant's tabulation, and counting the vote for Calais,

---

* The opinion of the court in 68 Maine, 587, was of the date of December 22, 1876, the mistake in date being an error of the printer.

he has a plurality of two hundred and seventy-six. It is for the respondent to show cause if any exists, why this return is not valid and in accordance with the truth.

It is not alleged, still less proved, that illegal votes were cast—that legal votes were rejected—that the count was not fair, or that the number of votes returned by the city clerk as cast were not cast. There is no allegation of fraud, intimidation or bribery. The question is, whether there are such neglects or omissions as necessitate the disfranchisement of the voters of Calais without fraud or neglect on their part.

A copy of the record of the votes of Calais, as canvassed by the aldermen and recorded by the city clerk was produced. This was competent evidence to prove the vote of the city.

In two wards, the objection is taken that the ward clerks of the preceding year continued to act without a new election. But this is in strict accordance with R. S., c. 3, § 26, which provides that a warden and clerk duly elected "shall hold their offices one year therefrom, and until others are chosen and qualified in their places."

The statute is in accordance with the common law as decided in *Brown* v. *Lunt*, 37 Maine, 423, where the acts of a justice of the peace, whose commission had expired, were held valid as the acts of a justice of the peace *de facto;* Mr. Justice HOWARD in his opinion, deciding that town officers holding over, were to be regarded as officers *de facto.*

It may not be amiss to add that the acting clerk was called by the respondent, and testified that the return truly stated the number of votes cast for the several candidates.

The objection is taken that in one of the wards one of its officers was not sworn.

A poll is not to be rejected because officers have been illegally chosen. *Thompson* v. *Ewing*, 1 Brewster, 69. The neglect of the inspectors or clerks to take any oath, will not vitiate an election, nor will its irregular administration, if sworn upon a book other than the Holy Evangelists as on Watts' Psalms and Hymns. *People* v. *Cook*, 8 N. Y. 68. The office of canvassers is purely ministerial, and the fact that some of the judges of

election do not appear to have been properly sworn, is no objection to the validity of their returns. *People* v. *Hilliard*, 29 Ill. 413. The rules for conducting an election contained in the statute, are directory and not jurisdictional in their character. They are intended to afford all citizens an opportunity to exercise their right to vote, to prevent illegal votes, and to ascertain with certainty, the true number of votes, and for whom cast. The decisions are, that the acts of public officers, being in by color of an election or appointment, are valid so far as the public are concerned. *The People* v. *Cook*, 8 N. Y. 84.

But if there should be found an irregularity in the ward, in which a ward officer was not sworn, and if it were to be held that the voters in that ward were to be deprived of the right of suffrage for no fault of their own, still the result would not be changed. The whole vote of the city is not thereby lost. By rejecting the ward in which the irregularity occurred, no matter which ward, the petitioner would still be elected. But little reason exists for rejection, as all the witnesses called by the respondent testify to the correctness of the return, and the fairness of the proceedings, and there is no evidence to the contrary.

It seems that the city clerk at the time the aldermen met to sum up the ward returns, entered on his record the names of all the aldermen, supposing they would all be present, but as all were not he erased the names of the absent. The erasure made the record conform to the fact, and in so doing, the clerk only did his duty.

So, it appears that errors occurred in the copying of ward returns, but they are trivial and do not change the result. In any event they show the election of the petitioner.

The evidence shows in some instances, carelessness and negligence in some of the city officials—but nothing indicating intentional fraud or affecting the result. The witnesses of the respondent testify in every instance where the inquiry is made to the correctness of the returns.

This court in 68 Maine, 588, use the following language : " It is to be regretted that votes are lost by the negligence or ignorance of town officers, but the obvious remedy is to choose such

as know their duty, and knowing it will legally perform it." To provide ample means for the correction of errors, provision was made the next year after this answer by the act of 1877, c. 212. The wisdom of the act is apparent. It enables the canvassing board within certain limits, to give effect to the will of the people and to disregard the captious quibblings by which the attempt is sometimes made to deprive citizens of their most important political rights without an opportunity to be heard.

The title to an elective office is derived from the popular expression at the ballot box. It is the manifest duty of all holding official positions, to give full effect to the will of the people as thus expressed. "Courts of justice," remarks the court in *Mann* v. *Cassiday*, 1 Brewster, 60, "would deserve to lose all confidence and respect if they were astute in devising technical rules under which the dearest rights of the people could be destroyed by unworthy men. We will not consent to be a party to such a system."

*Judgment affirmed. Judgment for the petitioner with costs.*

WALTON, BARROWS, DANFORTH, VIRGIN, PETERS, LIBBEY and SYMONDS, JJ., concurred.