## BLAND v. BENTON.

### Opinion delivered October 4, 1926.

1. ELECTIONS—PRIMARY ELECTION CONTEST—CONDITIONS PRECEDENT. —Under Crawford & Moses' Digest, § 3772, a contest of a primary election must be instituted within the time fixed and be prosecuted without unnecessary delay, and a complaint setting forth a *prima facie* case, supported by an affidavit of at least 10 reputable citizens, is a prerequisite.

2. ELECTIONS—PRIMARY ELECTION CONTEST—AMENDMENT OF COMPLAINT.—Where the complaint in a Democratic primary election contest alleged that persons not entitled to vote in such primary were permitted to cast their votes for contestee, it was not an abuse of discretion to refuse to permit the complaint to be amended at the trial to allege mistakes of the election officers in the count and tabulation of votes and to ask for a recount; such amendment stating a new cause of action, and not being filed within the time fixed by Crawford & Moses' Dig., § 3772, nor supported by the affidavits of 10 reputable citizens.

Appeal from Dallas Circuit Court; *Turner Butler,* Judge; affirmed.

*George Brown, J. H. Davis* and *R. W. Wilson,* for appellant.

*T. D. Wynne,* for appellee.

WOOD, J. This action was instituted by the appellant against the appellee on the tenth day of August, 1926. The appellant alleged, in substance, that he and the appellee were rival candidates for the nomination of sheriff and collector of Dallas County, Arkansas, on the Democratic ticket, at the primary election held in that county on Tuesday, August 10, 1926; that, upon the face of the returns made by the election officers, the appellant received 959 votes and the appellee 1,250; that of this number 600 were illegal votes, which should be

cast out and deducted from the vote received by the appellee, and that when this is done the appellant will have a majority of the legal votes cast. The appellant alleged that he filed a petition with the Democratic central committee on the 14th of August, asking the committee to cast out all illegal votes, which petition the committee refused, and accepted the vote as returned by the election officers, and thereupon certified the appellee as the nominee of the Democratic Party for sheriff and collector of Dallas County. The appellant alleged that, at the various voting precincts where the primary election was held, many persons were permitted to vote for the appellee and against the appellant who had not assessed a poll-tax for the year 1925, and whose names were not included on the list of poll-tax payers filed by the clerk of Dallas County on the second Monday of September, 1925, and whose names were not added to the assessment list for the year 1925. A list of these alleged illegal votes was attached to the complaint and marked Exhibit A. The complaint further alleged that the election officers permitted many persons to cast their votes for appellee and against the appellant whose names did not appear on the certified list of legal voters of Dallas County. The names of these alleged illegal voters were attached to the complaint and marked Exhibit B. The complaint alleged that the election officers permitted many persons who were nonresidents to cast their ballots for the appellee and against the appellant. A list of these alleged illegal voters was attached to the complaint, marked Exhibit C. The complaint further alleged that the election officers permitted persons who were not qualified to vote to cast ballots for the appellee and against the appellant. A list of these was attached to the complaint, and marked Exhibit D. It was further alleged that the election officers permitted various persons who were Republicans and not affiliated with the Democratic Party to vote for the appellee and against the appellant. A list of these was attached to the complaint, and marked Exhibit E. The complaint

alleged that, if all of these alleged illegal votes had not been cast or counted for the appellee and included in the returns of the election officers, the Democratic central committee would have issued the certificate of nomination to the appellant instead of the appellee. The prayer of the complaint was in part as follows: ''That the court proceed at once to hear testimony as to fraudulent votes and ballots cast in said election at each and every precinct in said county, in so far as same were cast for either defendant or plaintiff for the nomination of the office of sheriff and collector, and that the court cast out all votes or ballots cast by persons who are not qualified to vote for any reason above set out and whose names are mentioned in any of the exhibits attached; that it then count the true and legal votes and find the number cast for the plaintiff and for the defendant for the nomination of sheriff and collector of Dallas County, and if it be found that the plaintiff has a majority over the defendant, W. R. Benton, for such nomination, the plaintiff then prays that this court make an order canceling the certificate of nomination issued to the defendant, W. R. Benton, and that an order be made declaring plaintiff the Democratic nominee for the office of sheriff and collector of Dallas County, and that he be so certified and his name so placed on the ticket to be voted on at the general election to be held in October, 1926.''

The answer specifically denied all the allegations of the complaint as to the alleged illegal votes cast for the appellee. The appellee alleged that the Democratic central committee of Dallas County accepted the returns of election officers of the primary election held on August 10, 1926, and, according to these returns, certified the appellee as the nominee for the office of sheriff and collector of Dallas County, and concluded with a prayer asking that the appellant's petition be denied.

The judgment of the trial court recites, among other things, that the circuit court convened in special session on September 6, 1926, pursuant to the order of the circuit judge in vacation; that the court heard the cause

upon the complaint and the exhibits thereto and the answer of the defendant and the exhibits thereto; that the court, upon convening in the forenoon of September 6, 1926, prescribed the manner and method of examining the election returns for ascertaining the illegal ballots cast in said election and for determining the true number of illegal votes cast for the parties, as follows: "The plaintiff shall select one person to act as clerk, whose duty it shall be to keep count of each ballot cast for the plaintiff and each ballot cast for the defendant, and shall select one other person whose duty it shall be to examine each ballot and ascertain from inspection thereof for whom said ballot was cast and to declare the same. The defendant shall in like manner select two persons to act for him in the same manner as those selected by the plaintiff. When the number of illegal votes that have been cast in any box or voting precinct under examination shall have been ascertained, the clerk shall open the ballots of said precinct and deliver them to the representatives of the plaintiff and defendant as aforesaid, who shall, in open court and in the presence of the judge and the parties, examine each of the illegal ballots and count said ballots for the party for whom said ballot was cast, and, when all of the illegal ballots shall have been examined, the number of such illegal ballots that were voted for the plaintiff shall be deducted from the total number of votes certified by the county central committee as cast for him, and the number of votes remaining shall be deemed to be the true number of legal votes cast for the plaintiff at said election. And in like manner when all of the illegal ballots shall have been examined, the number of such illegal votes as were cast for the defendant shall be deducted from the total number of votes certified by the county central committee as cast for him, and the number of votes remaining shall be deemed to be the true number of legal votes cast for the defendant at said election. And that, after said illegal votes shall have been ascertained and deducted as aforesaid, then the person receiving the

majority of the legal votes cast shall be deemed to be the nominee of the Democratic Party for the office of sheriff and collector of said county.''

Before prescribing the above mentioned method for ascertaining the legal votes, the court declared the law to govern the representatives of the respective parties as above selected in determining who had received a majority of the legal votes cast. The court thereupon adjourned until September 7, at nine o'clock A. M., for the purpose of ascertaining who had received a majority of the legal votes cast, according to the above prescribed method. The court reconvened at nine o'clock, September 7, 1926, at which time the parties had not completed the list of votes to be counted, and the court took a recess until three o'clock P. M., in order to give them further time. Upon the reconvening of the court in the afternoon, and immediately before the count of the ballots and their examination began, the appellant offered to file the following amendment to his complaint:

''Comes J. A. Bland, and states that he is informed, has reason to believe, and therefore alleges that there were mistakes in addition of the votes, that many votes were miscalled, and mistakes in the tabulation of the votes as cast for the nomination of sheriff of Dallas County, and that said mistakes in addition, in the miscalling of the votes, and in the tabulation of the votes, were in favor of the defendant and against this plaintiff, and that a recount of the following boxes will show that he received more votes than were credited him, and that his opponent, W. R. Benton, received a far less number than were given him by the counting, calling, addition and tabulation, and that a recount will change the result at said precincts. Plaintiff prays as in his original complaint for a count of the ballots, the true and legal ballots after all illegal ballots have been cast out, as to all precincts, and now especially asks for a recount, readdition and retabulation of the vote as cast at box No. 1, town of Fordyce; box or ward No. 2, Fordyce; precinct or box No. 3, town of Fordyce; Fordyce box, Fordyce Township;

Ivan precinct, Southall Township; Manchester Township; Dalark precinct, Sisson precinct, Jackson Township; and Eaglette precinct, Holly Springs Township."

The court refused to allow the amendment to be filed, holding that "said amendment was another and different cause of action to that stated in the complaint filed, which was the basis of this proceeding and upon which the parties had prepared their case." The court thereupon proceeded to the trial of the cause upon the original complaint and answer and the exhibits attached thereto and the amended and additional exhibits filed, and permitted both parties, during the hearing of said cause, to further amend their exhibits and lists by the addition of names of other persons than those already named whose votes they might desire to challenge as *illegal*. The court thereupon found as follows: "That the total number of illegal ballots cast at said election was 728, of which the plaintiff, J. A. Bland, received 248, and the defendant, W. R. Benton, received 480; that, after deducting the number of illegal votes received by plaintiff from the total number certified as cast for him, there remained 711 legal votes cast at said election for said J. A. Bland, and after deducting the number of illegal votes received by W. R. Benton from the total number of votes certified as cast for him, there remained 771 legal votes cast for the said W. R. Benton; that the majority of the defendant W. R. Benton was sixty legal votes." At this juncture the appellant reoffered the amendment to his complaint as above set forth, and prayed the court to proceed further with the examination in accordance with the allegations and prayer of such amendment. The court again refused to consider the amendment. The court thereupon entered a judgment declaring that the appellee was the nominee of the Democratic Party for the office of sheriff and collector of Dallas County, to be voted on at the next general election, and declared that his certificate of nomination by the Democratic central committee was valid and in full force and effect. The appellant duly excepted to the findings of law and fact by the court,

and duly prosecutes this appeal from the judgment as above rendered.

1.    This action to contest the certification of nomination and the certification of votes as made by the county central committee was instituted under § 3772, C. & M. Digest.    That section, among other things, provides: ''The complaint shall be supported by the affidavits of at least ten reputable citizens, and shall be filed within ten days of the certification complained of. * * * The complaint shall be answered within ten days.''    The provisions of the above and of the two following sections show that it was the intention of the lawmakers, if an election contest were contemplated, that same should be instituted and prosecuted without unnecessary delay. It was the purpose of the lawmakers to require the party who instituted the contest to file a complaint in which a *prima facie* case should be set forth and that the cause of action or grounds of contest set forth in the complaint should be supported by the affidavits of at least ten reputable citizens as a prerequisite to the jurisdiction of the court to entertain the contest.  *Logan* v. *Russell,* 136 Ark. 217-221.    This court, in the above and other cases therein cited, holds that contest proceedings under the statute are not civil actions within the meaning of our Code of Civil Practice, but are special proceedings governed by the statute authorizing and regulating them.

Now, the allegations of the original complaint show that the appellant predicated his right to contest upon the following grounds:

(a).    Because the election officers did not comply with the provisions of the law concerning the assessment, listing, and payment of poll taxes.    See §§ 3738-3741 inclusive, C. & M. Digest.

(b).    Because persons were permitted to cast their ballots for appellee whose names did not appear upon the official list of legal voters of Dallas County filed by the collector.    Section 3742, C. & M. Digest.

(c).    Because persons were permitted to cast their ballots for the appellee who were nonresidents of Dallas County.

(d). Because persons were permitted to cast their ballots for appellee who were minors.

(e).. Because persons were permitted to vote for the appellee who were Republicans and not affiliated with the Democratic Party.

The answer was filed to this complaint within ten days, and specifically denied that illegal votes were permitted as alleged. The answer and the complaint raised the issue that illegal votes were cast at the election, and upon this issue the court declared the law as to what constituted a legal voter, and directed the parties and their representatives to proceed to count the ballots cast at the election, eliminating such votes as were found to be illegal under the law as declared by the court. The court permitted the respective parties, while thus canvassing the ballots, to add any names other than those already mentioned to the exhibits which the parties might desire to challenge as being illegal voters. Before the count was completed and the result announced under the issue thus. joined, the appellant, at this juncture, asked to amend his complaint by setting up that the election officers had made mistakes in addition of the votes, in miscalling of the votes, and in the tabulation of same, and asked for a recount, readdition and retabulation of certain boxes and precincts, naming them.

The trial court was correct in holding that the proffered amendment stated a cause of action different from that set up in the original complaint and upon which the parties had prepared their case and proceeded with the hearing, and did not abuse its discretion in refusing to allow the amendment to be filed. Indeed, an examination of the proffered amendment will discover that its allegations are entirely too general to form the basis of a contest. It alleges that there were mistakes in addition of the votes, that many votes were miscalled, and mistakes were made in the tabulation of the votes in four different wards of the town of Fordyce and in four voting precincts in rural townships. The amendment, in this form, is aptly characterized by the counsel for the appel-

lees as an effort on the part of the appellant "*to do a little fishing,*" to have the results as shown by the certified returns of the election officials reviewed in order to ascertain whether they had made some mistakes in the addition, calling, and tabulation of the votes that would perchance result in appellant's favor. The amendment, in this form, was not sufficiently definite to state a *prima facie* cause of action; and, if it were, the circuit judge, *in limine,* would have been justified in refusing to convene a special term of the court for the purpose of hearing an election contest. The amendment was not supported by the affidavits of ten reputable citizens; and, as it states entirely different grounds for contest from that of the original complaint, the court was warranted in treating it as demurrable for that reason as well as for its general indefiniteness. The appellant does not lay his finger upon any specific mistake in any particular precinct in the counting, calling, adding and tabulating of the votes. The proposed amendment was only tantamount to a sweeping allegation that there were irregularities and derelictions on the part of the election officers, but it does not specify any particulars.

In the case of *Ferguson* v. *Montgomery,* 148 Ark. 83, the charge was made by the contestant that certain illegal votes had been cast for the contestee in certain townships. The contestee answered that certain illegal votes had likewise been cast for the contestant in certain other townships. It developed at the hearing that certain illegal votes were cast in other townships than those named either in the complaint or answer; and the contestant was allowed to amend his complaint so as to embrace the illegal votes in other townships. The court, in the case at bar, permitted both parties, during the hearing, to further amend their exhibits and lists by the addition of names of other persons than those already named whose votes they might desire to challenge as illegal. The court therefore, in the present case, as in the case of *Ferguson* v. *Montgomery supra,* permitted amendments that did not change the grounds of contest.

In the case of *Ferguson* v. *Montgomery supra,* we stated
the rule as to amendments as follows: "It is impossible
to state with precision the rule with regard to amend-
ments of the pleadings. Much must be left to the discre-
tion of the court, or the very object of the statute will be
defeated. On the other hand, the contestant should not
be allowed to make amendments which would necessa-
rily unduly delay the trial of the contest, and, on the other
hand, he should be allowed to make amendments in all
cases where no such delay would result and where the
amendment was made for the purpose of presenting the
issues with due diligence." And we quoted from *Mann*
v. *Cassidy,* 1 Brewster (Pa.) 11, as follows: "The
rule must not be held so strict as to afford protec-
tion to fraud, by which the will of the people is set at
naught; nor so loose as to permit the acts of sworn offi-
cers, chosen by the people, to be inquired into without an
adequate and well-defined cause."

In the case at bar it will be seen that the court per-
mitted the returns of the election officers in all the voting
precincts of the county to be reviewed for the purpose of
eliminating therefrom any illegal votes that might have
been cast for either party. But the court refused to
allow the election returns challenged upon the other gen-
eral and independent grounds alleged in the proposed
amendment. In this ruling the court was correct. In
*Cain* v. *CarlLee,* 169 Ark. 887-900, we said: "The pre-
sumption is that election officers have done their duty
and obeyed the provisions of the Constitution and stat-
utes in holding an election. Hence the returns made by
them showing the result of an election are *prima facie*
correct, and are not to be overturned except by proof to
the contrary. Thus it is that in all election contests the
returns of the election officers in the various precincts
challenged will not be set aside as a whole except upon
proof tending to show a course of conduct upon the part
of the election officers, or some of them, indicating that
they were guilty of such fraud in conducting the election
as to make it impossible to fairly ascertain who received

the majority of the votes cast.   *   *   * But, unless such fraud is shown upon the part of the election officers, the returns should only be purged of illegal ballots, and the remainder counted as shown by these returns.''

2.  Furthermore, the trial court did not abuse its discretion in refusing to allow the proposed amendment because it was not presented in apt time.  As already stated, the amendment proposed different grounds of contest from those made by the complaint and answer which raised the issue of contest within the time prescribed by § 3772, C. & M. Digest.  The amendment, if allowed, would have injected into the cause independent grounds of contest after the time limit for a contest prescribed by statute had expired.  In McCrary on Elections, at § 443, p. 321, the author says:  ''As we have already seen, there are strong reasons for requiring the parties to an election contest to use great diligence in preparing for an early trial.  In accordance with this rule, it is held that an amended pleading setting up new facts will only be allowed where it affirmatively appears that such facts are new; that they were first discovered after the service of the original notice; and that by the use of due diligence they could not have been discovered before such service.''

In *Harmon* v. *Tyler,* 112 Tenn. 8-24, the Supreme Court of Tennessee, in an exhaustive opinion in which numerous authorities are cited, passing upon a similar question, among other things said: ''The evident purpose of the Legislature in creating a special tribunal, with no other jurisdiction, to try these contests, and requiring them to be promptly instituted and speedily heard and determined, was to prevent the strife and animosities which necessarily attend public elections from being continued in the courts, and to prevent those whom the people have elected to the offices from being deprived of their possession, and denied the right to exercise the functions and enjoy the emoluments of the office, and from being harassed and disturbed in the discharge of their public duties, by prolonged litigation.  These wholesome and

just purposes would be entirely defeated under any other construction. If the original contest, or a new one by an amended or supplemental pleading, could be commenced a month after the expiration of the time prescribed, it could be done at any later period, and the litigation in this way prolonged, in many instances, until the term of office had expired.''

In 20 Corpus Juris, Elections, at § 310, under the title of ''New Matter'' it is said: ''Except in jurisdictions where election contests are governed by the general rules of chancery practice, the general rule is that the notice or pleadings cannot be amended so as to introduce new parties or new grounds of contest, at least after the time for filing the original pleading or notice has expired, and it is especially true where no good reason is given for not presenting the new matter in the original pleading.'' Cases to sustain the text are cited in note.

We conclude therefore that the trial court did not abuse its discretion, and did not err in refusing to allow the proposed amendment to appellant's complaint, and did not err in the methods pursued by it to determine the result of the primary election for the nomination for the office of sheriff and collector of Dallas County, and in declaring that the appellee was the nominee of the Democratic Party, and that his certificate of nomination was valid, and in entering a judgment dismissing appellant's complaint, and for costs against him.

The judgment is therefore affirmed.