TERRY *v.* HARRIS.

4-3317

Opinion delivered October 30, 1933.

*W. G. Riddick* and *Roy D. Campbell,* for appellant.

*Arthur G. Frankel* and *June P. Wooten,* for appellee.

SMITH, J. Suit was filed by Brooks Hays in the Pulaski Circuit Court against David D. Terry and Lee Miles, as chairman, and H. G. Combs, as secretary, of the Democratic State Central Committee, the complaint in which contained the following allegations: A Democratic primary election was held on September 26, 1933, in the Fifth Congressional District of Arkansas, for the purpose of nominating a Democratic candidate for Congress in said district. The district is composed of Pulaski, Franklin, Yell and five other counties. At this election the plaintiff, Hays, and the defendant, Terry, were the only candidates. The total number of votes cast in said election, as tabulated and certified to by the various county central committees, was 18,927, of which number Terry received 9,776 votes, and Hays 9,151 votes, giving Terry an apparent majority of 625.

It was alleged that illegal votes were cast and counted for Terry as follows: 300 in Pulaski County, 200 in Franklin County, and 1,450 in Yell County, and that, if only the legal votes cast at said election were counted, Hays will have a clear and large majority. It was also alleged that Terry had paid money to various

persons in Yell, Pulaski and Franklin counties for soliciting votes for Terry, in violation of § 3902, Crawford & Moses' Digest.

The complaint alleged that the defendant, Lee Miles, as chairman, and the defendant, H. G. Combs, as secretary, of the Democratic State Central Committee of Arkansas, under the terms of a resolution adopted by the Democratic State Central Committee, were directed to issue a certificate of nomination to the successful candidate in said election.

It was prayed: (a) That the ballots be purged and Hays declared the nominee; (b) that a finding be made that Terry has been guilty of violating the provisions of the corrupt practice act; and (c) that Miles and Combs, as chairman and secretary, respectively, of the Democratic State Central Committee, "be enjoined from certifying the nominee for Congress in said Fifth Congressional District until further orders of this court."

Attached to the complaint, as an exhibit thereto, is a copy of a resolution adopted by the Democratic State Central Committee on June 20, 1933, under which the election was called and held. It was therein, among other things, ordered that a Democratic primary election be held on the second Tuesday in September, 1933, "for the purpose of nominating a Democratic candidate for Congress from said district, to be voted upon at a special election to be called for the purpose of filling the unexpired term created by the resignation of the Honorable Heartsill Ragon." The resolution provided that "the returns of the election shall be made and certified to the secretary of the State Central Committee within the time, after said special primary election is held, as is now provided by law for such returns and certificate made following general primary elections. The chairman and secretary of the State Central Committee will cast up such returns, based on said certificates, and certify the nominee to the State Election Board."

The resolution requested the Governor not to call a special election "until such time as will enable the holding of the primary herein called and in the second primary, made necessary under the laws of the State of

Arkansas," and that no nominee be certified except the recipient of "a majority of the votes cast at such special election or second primary."

In addition to this complaint, the plaintiff, Hays, filed a "petition," in which he alleged that, unless restrained, Miles, as chairman, and Combs, as secretary, of the Democratic State Central Committee, will issue a certificate of nomination to the defendant, Terry, and it was prayed that the chairman and secretary of the committee be ordered to refrain from issuing such certificate pending this contest and until the further order of the court.

After argument upon this petition, the presiding judge indicated his intention to grant the prayer thereof, but, upon agreement of counsel, that action was held in abeyance until a petition for prohibition could be filed in this court. That petition has been filed, and the facts herein stated have been made to appear, and it is prayed that the circuit court be prohibited from restraining the chairman and secretary of the Democratic State Central Committee from certifying the result of said election until the conclusion of this contest thereof.

It is true, as counsel for respondent contend, that the writ of prohibition does not issue to prohibit a lower court from erroneously exercising its jurisdiction, but issues only when that tribunal is wholly without jurisdiction, or is proposing to act in excess of its jurisdiction. *Bassett* v. *Bourland,* 175 Ark. 271, 299 S. W. 13. The question presented for our decision is therefore whether the circuit court has the jurisdiction to restrain the party officers from complying with the resolution under which the primary election was called pending the determination of the contest of that election.

It is settled that the right to contest an election in the courts is one of statutory creation, and one which did not exist before that right was conferred by statute. *Walls* v. *Brundidge,* 109 Ark. 261, 160 S. W. 230; *Cain* v. *McGregor,* 182 Ark. 637, 32 S. W. (2d) 319.

The statute conferring this right of contest is the initiated act No. 1, found in volume 2 of the Acts of 1917,

page 2287, and appearing as § 3757 *et seq.,* Crawford & Moses' Digest.

The order which the circuit court is about to make is one which, if made, will prevent the party authorities from determining and certifying who this nominee is, and we find nothing in the initiated act referred to which has conferred that jurisdiction upon the courts. The act has not deprived the party authorities of the right and duty to determine, in the first instance, who its nominee is for any particular office. The act does confer the jurisdiction upon the courts to review that finding, which review may be made upon an inquiry into any and all relevant facts tending to show which candidate received the majority of the legal votes. *Robinson* v. *Knowlton,* 183 Ark. 1127, 40 S. W. (2d) 450.

Section 3769, Crawford & Moses' Digest, which is part of § 11 of the initiated act of 1917, provides that the county central committee shall certify the nomination of all county and township officers, ''and shall certify the vote of all candidates for circuit and district offices to the circuit and district committees (including congressional districts), and shall certify the vote for candidates for United States senate and for all State offices to the State Central Committee.''

The statement is made in the briefs and is treated by opposing counsel as an undisputed fact that the congressional committees referred to are nonexistent. It was, no doubt, because of this fact that the resolution hereinabove referred to directed the State Central Committee to ''cast up such returns, based on said certificates (of the county committees), and certify the nominee to the State Election Board.''

The right to contest the certification of nomination or the certification of the vote is conferred in § 12 of the initiated act, and the procedure is there defined. Sections 3772 and 3773, Crawford & Moses' Digest. But these provisions are not intended to supersede the power of the party committees to determine, in the first instance, who its nominees are. The right conferred, as we have said, is to have that determination and certification judicially reviewed in the manner provided by the act.

It is true the election here contested is a primary specially called to nominate a single candidate, and is not a general primary election; but this fact does not alter the law of the case. The statute must receive the same interpretation in either case.

It is suggested in the brief of the respondent that the Governor may not call a special election at which the party candidate may be voted for until after the termination of this contest and the actual nominee ascertained and declared, and that the certification of nomination should be postponed until the court is prepared to pronounce judgment.

But, if the court has this power in the contest of a special primary election, it has the same power in a contest growing out of a regular primary, and, if so, delay in deciding the contest might operate in having an election held at which the party would have no candidate for the contested office. The law fixes the time when regular primary elections shall be held and general elections following them, and the courts are without power to change those dates, and, if the courts may prevent party committees from certifying the result of a primary election pending its own review and final determination of a contest, it might frequently happen that the party would have no nominee entitled to have his name placed upon the ticket as such, and a general election, which the courts cannot postpone, would result in the election of some person running independently of a party nomination, or as the nominee of another party, in which event the contest would be fruitless to all persons concerned.

It was not contemplated that the party holding the primary election should be deprived of the right to have a candidate voted for as its certified nominee. On the contrary, it appears to have been clearly contemplated that the person certified as the nominee of the party by the appropriate committee thereof should be treated as the candidate of his party until it shall have been adjudged that he is not the legal nominee.

The litigation necessary to determine the question of the nominee at the primary election may be protracted to a date beyond the day of the general election without

the court having determined who the legal nominee is; but it does not follow that the party must be without a candidate. The party does have a candidate under the case stated, that person being the candidate who has been certified by the appropriate party committee as the party nominee. This is made clear by the provisions of § 15 of the act of 1917, which appears as § 3776, Crawford & Moses' Digest. This section provides that, if the person certified by the appropriate committee to be the party nominee is elected at the general election, and it is later determined, after the contest has been heard and decided, that he was not entitled to the nomination, "then such judgment" (that he was not entitled to the nomination) "shall operate as an ouster from office, and the vacancy in it shall be filled as provided by law for filling vacancies in such office in case of death or resignation."

If these statutory provisions do not apply to a contest for a congressional nomination, then there is no authority for such contests. If they are applicable, then the candidate certified by the party committee as its nominee remains such until the court has determined in the manner provided by law that the contestee is not the legal nominee.

We conclude therefore that the circuit court was without jurisdiction to restrain the State committee from complying with the resolution pursuant to which the primary was called, by tabulating and certifying the result of the election, subject, of course, to the judicial review provided by law.

It is therefore ordered that the writ of prohibition issue as prayed, directing the circuit court to take no action preventing the party authorities from certifying the nomination in accordance with the party rules.