LaFargue *v.* Waggoner.

4-3692

Opinion delivered October 8, 1934.

760

*M. F. Elms, A. G. Meehan* and *John W. Moncrief,* for petitioner.

*G. W. Botts, Geo. E. Pike* and *W. A. Leach,* for respondent.

*Jeta Taylor, J. E. Yates* and *Benson & Woolsey, amici curiae.*

MEHAFFY, J. The primary election was held on August 14, 1934. In Arkansas County there were several candidates for sheriff, and no one of them received a majority of all the votes cast in said primary election for sheriff and collector, and the Democratic Central Committee, on August 15, 1934, decided that C. C. McCallister and Lloyd LaFargue had received the highest numbers of votes cast in said primary election for said office, and they were each declared to be eligible as candidates for the nomination to said office in the run-off primary which was held on August 28, 1934. After the run-off primary the Arkansas County Democratic Committee canvassed the returns and certified that LaFargue had received 2,102 votes and McCallister 2,037 votes, and declared LaFargue the nominee of said primary election.

On September 4, 1934, C. C. McCallister filed a complaint against Lloyd LaFargue in the Arkansas Circuit Court to contest said election and the certificate of nomination. He alleged in his complaint that the plaintiff and defendant, together with J. A. McKay, W. C. Woodson, Eddie Hughes and Abbott Trice were candidates on August 14, 1934, for the Democratic nomination for the office of sheriff and collector of Arkansas County; that neither of the above-named persons received a majority of all the votes cast in said primary election, and, this fact having been ascertained by the Democratic Central Committee, and the committee having ascertained that plaintiff and defendant had received the highest number

of votes cast in said primary election for said office, they were by said committee declared and certified to be eligible as candidates for the nomination to said office in the run-off primary to be held subsequently. Plaintiff and defendant were candidates in said run-off primary held on August 28, 1934. On August 31, 1934, the central committee canvassed the returns and declared that defendant had received 2,102 votes, and that the plaintiff had received 2,037 votes, and declared the defendant the nominee, and so certified him to be the nominee. Plaintiff denied that defendant was the nominee; denied that he had received 2,102 votes, and alleged that in one township 125 qualified electors each cast his ballot for the plaintiff, and that each of said ballots were counted for the defendant. The list of names of these 125 voters was attached as exhibit A to the complaint, and made part thereof. Plaintiff alleges that numbers of other persons voted for the defendant who were not qualified electors. He also alleges irregularities in the handling of the vote of Keaton Township. Irregularities are also alleged in the primary election in the town of DeWitt, and it is alleged that illegal votes were cast and counted for the defendant. It is also alleged that persons living in Prairie Township voted in DeWitt, and voted for the defendant. It is further alleged that of the total number of votes cast in said primary election, plaintiff received 2,237, and the defendant not more than 1,838, giving the plaintiff a majority of 399 legal votes, and he asked that the returns of the election be purged of all illegal votes, and that he be declared the nominee. The complaint was supported by more than ten persons, each of whom swore that he was a reputable citizen of Arkansas County, a member of the Democratic party, and qualified elector of Arkansas County.

On September 10, 1934, an amendment was filed by plaintiff, naming the persons whom he alleges voted for the defendant who were not qualified electors. He alleges that plaintiff is a resident of, and qualified elector in Arkansas County, and is and was at the time of the voting, qualified to hold the office of sheriff and collector.

On September 12, 1934, the defendant filed a demurrer to plaintiff's complaint, in which he stated, first, that the complaint fails to state facts sufficient to constitute a cause of action; second, that the complaint fails to state facts sufficient to confer jurisdiction on the court to grant any relief to plaintiff. On the same day, September 12, defendant filed a motion to dismiss, in which he set up the same grounds that he did in his demurrer, and, in addition to these, that the complaint was not verified as required by law, and that the amendment to the complaint was filed after the expiration of ten days.

Thereafter, on September 17, 1934, the defendant filed an amendment to his motion to dismiss, setting up numerous grounds in addition to what he had already alleged.

On September 21st the court overruled the demurrer and also overruled the motion and amendment to motion to dismiss, and held that the court had jurisdiction to proceed to a hearing and determination of the case. Thereupon the defendant announced that he would apply to this court for a writ of prohibition, and on September 21st filed his petition for a writ of prohibition against W. J. Waggoner, circuit judge, and C. C. McCallister, prohibiting the circuit court from exercising jurisdiction.

The parties have filed lengthy briefs, and we will not undertake to review all the authorities to which attention has been called by the parties.

It is earnestly contended that act No. 38 of the Acts of 1933 does not provide for any contest. It is true that it does not say anything about contesting the run-off primary, but the sole purpose of the original law authorizing a contest is to secure the certification and nomination of the person who has received the highest number of legal votes. Before the passage of act 38 the person receiving the highest number of legal votes in a primary election was declared the nominee and certified as such, although he might not have received a majority of all the votes. There might be so many candidates in the race for any particular office that the one getting the highest num-

ber of votes would have a very small per cent. of the total vote, and it was to remedy this condition that the Legislature passed act 38, the purpose being to certify no one as the nominee of the party unless he had received a majority of all the legal votes cast. The purpose of the primary election law is to enable a political party to hold a legal election and certify the person as nominee who receives the greatest number of legal votes. Act 38 was passed to correct the evil above-mentioned, and is a part of the system providing for primary elections, and must be construed with the original act authorizing primary elections. While the act does not say so in so many words, this is an amendment of the primary election law. Prior to the passage of this act, the law provided for contesting the election.

"In the construction of amendments to statutes, the body enacting the amendment will be presumed to have had in mind existing statutory provisions and their judicial construction, touching the subject dealt with. The amendatory and the original statute are to be read together in seeking to discover the legislative will and purpose, and, if they are fairly susceptible to two constructions, one of which gives effect to the amendatory act, while the other will defeat it, the former construction should be adopted." 25 R. C. L., 1067.

"Statutes must have a rational interpretation to be collected, not only from the words used, but from the policy which may be reasonably supposed to have dictated the enactment, and the interpretation should be rigorous or liberal, depending upon the interests with which it deals." 25 R. C. L. 1077.

It would be unreasonable to suppose that the Legislature intended to provide for a run-off primary and prohibit a contest, because, if it prohibits one at all, it prohibits, no matter how much fraud might be practiced in the run-off primary. The purpose of the primary law and the provisions for contesting is to secure fair elections, and the nomination of the candidate who receives the highest number of legal votes. Under the original law, as we have already said, one receiving a plurality,

no matter how small, was declared the nominee. It was evidently the intention of the Legislature to remedy this particular evil, and to amend the general law in that respect. It provides that no person shall be declared the nominee of any political party at any primary election unless such person has received a majority of all the votes cast at such primary election, and that is the only difference 'between act 38 and the law as it was before.

Act 38 also provides that the second primary election shall 'be conducted according to the law prescribed for conducting the general primary election, and we think this means that the law prescribed for conducting the general primary election governs in every respect, except that the candidate, in order to get the certificate of nomination, must get a majority of all the votes cast.

The original act provides not only for the election to be held on a certain day, but it also provides that special primary elections may be called to fill vacancies, and that this law shall govern the same as far as applicable. There is nothing in the section providing for special primaries about a contest.

Section 12 of the initiated act provides that a right of action is conferred on any candidate to contest the certification of nomination or the certification of the vote.

There is a well-established principle of law which applies to the construction of constitutions as well as statutes, and that is that a statute extends by inference to cases not originally contemplated, when it deals with a class within which a new class is brought by later statutes. *Taaffe v. Sanderson,* 173 Ark. 970, 294 S. W. 74; *Nations v. State,* 64 Ark. 467, 43 S. W. 396.

Act 165 of the Acts of 1909 makes primary elections legal elections. The initiated act of 1917 was amended by act 19 of the Acts of 1919, fixing the time to hold the general primary election. This amendment, however, provided for special primary elections to fill vacancies, but nothing was said about a contest. Yet this court has held that the law applies to special elections.

In the case of *Terry v. Harris,* 188 Ark. 60, 64 S. W. (2d) 80, the court said: ''It is true the election here con-

tested is a primary specially called to nominate a single candidate, and is not a general primary election; but this fact does not alter the law of the case. The statute must receive the same interpretation in either case.''

We have repeatedly held that the statute providing for contesting elections should be liberally construed, the purpose of the contest being to determine which candidate received the greatest number of votes. To hold that a contest could not be had in the run-off primary would defeat the very purpose of the law providing for a contest.

The law provides: ''A right of action is hereby conferred on any candidate to contest the certification of nomination or the certification of vote as made by the county central committee.'' That necessarily means any candidate and in any primary election.

Act 38 provides that the second primary shall be conducted according to the law prescribed for conducting the general primary election, and that the candidate receiving the majority of all the votes cast shall be declared the nominee.

''Statutes *in pari materia* are those which relate to the same person or thing, or to the same persons or things, or which have a common purpose; and, although an act may incidentally refer to the same subject as another act, it is not *in pari materia* if its scope and aim are distinct and unconnected. It is a well-established rule that in the construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although they were enacted at different times and contain no reference to one another. The endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the Legislature, or to discover how the policy of the Legislature with reference to the subject-matter has been changed or modified from time to time. In other words, in determining the meaning of a particular statute, resort may be had to the established

policy of the Legislature as disclosed by a general course of legislation. With this purpose in view therefore, it is proper to consider, not only acts passed at the same session of the Legislature, but also acts passed at prior and subsequent sessions, and even those which have expired or have been repealed.'' 59 C. J., 1042.

Manifestly the intention of the Legislature, in enacting the primary election law, was to make the primary election legal, prevent fraud and corruption in elections, to see that the people's choice in the election should have the office, and to provide for a contest wherever charges of fraud or mistake in elections change the result. We think there can be no doubt that it was the intention, in passing act 38, to secure the rights above mentioned, and not to prevent a contest in order to determine whom the people had elected.

It is next contended that the complaint did not state facts sufficient to constitute a cause of action or to give the court jurisdiction. As we have already said, the statute confers a right of action on any candidate. Crawford & Moses' Digest, § 3772.

Section 3773 of Crawford & Moses' Digest provides, among other things: ''If the complaint is sufficiently definite to make a *prima facie* case, the judge shall, unless the circuit court in which it is filed is in session or is to convene within 30 days, call a special term,'' etc.

We have set out above substantially the allegations in the complaint for contesting the election. The petitioner contends that the court has no jurisdiction, first because it is said the complaint is not verified. The statute provides not that the plaintiff shall verify his complaint, but that the complaint shall be supported by the affidavits of ten reputable citizens. This was done.

It is argued that the complaint is not sufficient to give the court jurisdiction because the plaintiff did not set out the number of votes received by each candidate in the general primary election, but the complaint does state that plaintiff was a candidate in the general primary election held on August 14, 1934, and names the other candidates for the office of sheriff and collector in

that election, and states that neither of the candidates received a majority of all the votes cast. This could mean but one thing, and that is that neither of them were nominated in the primary election on August 14. Then he alleges that the committee found that neither of them had received a majority, and also stated and certified that plaintiff and defendant received the highest number of votes in the general primary, and certified each of them as eligible candidates in the run-off primary.

We have held that there is a presumption that the election officers performed their duty, and they therefore would not have certified plaintiff and defendant as candidates in the run-off primary if they had not been entitled to be so certified.

It is also contended by the petitioner that McKay, Woodson, Hughes and Trice were necessary parties to the contest. Neither of these persons were candidates in the run-off primary. It is true that in the original complaint plaintiff did not allege that he was a member of the Democratic Party, but the allegations in the complaint clearly show that he must have been, because he alleges he was a candidate in the general primary, and that the Democratic Central Committee certified him as a candidate in the run-off primary.

There are numerous other grounds set up in defendant's motion to dismiss plaintiff's complaint, which we do not deem it necessary to take up and discuss separately. All the questions raised by defendant in his motion to dismiss were questions that the trial court had a right to inquire into and determine. The trial court had a right to determine the question of its jurisdiction; and wherever the jurisdiction of the trial court depends upon facts, the question must be decided by the trial court, from which decision either party may appeal to this court.

"It is well settled that, if the existence or non-existence of jurisdiction depends on contested facts which the inferior court is competent to inquire into and determine, a writ of prohibition will not be granted, although the superior court should be of the opinion that the

claims of fact had been wrongfully determined by the lower court, and, if rightfully determined, would have ousted the jurisdiction." *Merchants' & Planters' Bank* v. *Hammock,* 178 Ark. 746, 12 S. W. (2d) 42; *Roach* v. *Henry,* 186 Ark. 884, 56 S. W. (2d) 577; *Crow* v. *Futrell,* 186 Ark. 926, 56 S. W. (2d) 1030.

The questions raised by defendant's demurrer and motion to dismiss were questions for the lower court, questions where the jurisdiction of the court depended upon contested facts. The original complaint stated facts sufficient to constitute a cause of action; and if a motion to make more definite had been filed by the defendant, it is entirely probable that the court would have required the plaintiff to make his complaint more definite and certain, and plaintiff could amend his complaint after the ten days.

This court has several times held that the statute providing for contesting elections should be liberally construed. The purpose of the contest is to determine what candidate received the greatest number of votes; and if there are sufficient facts stated to give the other party reasonable information as to the grounds of contest, then the case should be tried on its merits. If the complaint was indefinite and uncertain, the court should require amendments to make it more definite and certain.

The pleadings in an election contest case should be sufficiently specific to give reasonable information as to grounds of contest. The statute provides that the contest shall be begun within a certain number of days, and this court has repeatedly held that, after the time for filing a contest has expired, the contestant cannot so amend his complaint so as to set forth a new cause of action. He can, however, after the time has expired, amend his complaint by making it more definite and certain, as to any charge in the original complaint, and, if a motion to make more specific is filed, it would be his duty to make the amendment. *Robinson* v. *Knowlton,* 183 Ark. 1127, 40 S. W. (2d) 450.

We have also said in *Robinson* v. *Knowlton,* 183 Ark. 1133, 40 S. W. (2d) 450: "Since such contest is generally

held not to be a civil action, subject to rules of pleading in actions at law, but to be a special statutory proceeding, varying in its nature as well as in the sufficiency of the pleadings, according to the statutes of the different States, the same strict, technical accuracy in pleading is not usually required as in civil actions *inter partes*. 20 C. J., 235.''

It has been said with reference to the pleadings that the rule must not be so strict as to afford protection to fraud, by which the will of the people is set at naught, nor so loose as to permit the acts of sworn officers, chosen by the people, to be inquired into without an adequate and well-defined cause. *Bland* v. *Benton,* 171 Ark. 805, 286 S. W. 976; *Gower* v. *Johnson,* 173 Ark. 120, 292 S. W. 382.

We have also said in a recent case: ''The statute does not require supporting affidavits of the citizens to these permissible amendments. These amendments may be made without the supporting affidavits and after the expiration of the original ten days, when unreasonable delay in the trial of the cause will not result therefrom.'' *Robinson* v. *Knowlton, supra; Cain* v. *McGregor,* 182 Ark. 633, 32 S. W. (2d) 319; *Wilson* v. *Caldwell,* 186 Ark. 261, 53 S. W. (2d) 438.

The court of South Dakota, in passing upon the sufficiency of pleadings in an election contest, said among other things: ''While the notice does not, in so many words, allege that plaintiff had been a candidate for the disputed office and that his name appeared on the printed ballot as such candidate, it does allege that he is a duly qualified elector of said county and duly qualified to act as county auditor of said county; that the canvassing board had made certain mistakes in counting and canvassing the vote; and that, had it not been for such errors in counting the ballots and other errors and irregularities set forth in said notice of contest, the said election would have resulted in a majority vote for plaintiff, and he would have been declared county auditor of Hanson County. From these facts but one inference can be drawn, and that his name was on the ballot. Otherwise he could not have received any votes at all.'' *Dobson* v.

*Lindekugel,* 38 S. D. 606, 162 N. W. 391; *Hadley* v. *Gutridge,* 58 Ind. 302; *Rounds* v. *Smart,* 71 Maine 380.

The court also said in the same case: "The statute should receive a liberal interpretation to the end that such matters may be determined on their merits."

Our conclusion is that the complaint stated a cause of action, and that defendant's remedy was by motion to make more definite and certain.

The writ of prohibition is a discretionary writ. It is never granted unless the inferior tribunal has clearly exceeded its authority, and the party applying for it has no other protection against the wrong that will be done by such usurpation. *Pacific Mutual Life Insurance Company* v. *Toler,* 187 Ark. 1073, 63 S. W. (2d) 839; *Macon* v. *LeCroy,* 174 Ark. 228, 295 S. W. 31; *United Mine Workers* v. *Bourland,* 169 Ark. 796, 277 S. W. 546; *Metzger* v. *Mann.* 183 Ark. 40, 34 S. W. (2d) 1069.

It follows that the writ must be denied, and it is so ordered.

JOHNSON, C. J., (concurring). I concur with the majority that act 38 of 1933 is amendatory of prior primary election laws and that the initiated act of 1917 as amended by act 19 of 1919 is applicable thereto and gives a right of contest to all defeated candidates at such runoff primary election. For this reason only the application for prohibition should be denied.

The determination by the majority that the complaint of the contestant filed in the Arkansas Circuit Court is sufficient against demurrer is unwarranted. This question is not before us and cannot be until brought here by appeal. *Equitable Life Insurance Society* v. *Mann, ante* p. 751, and cases there cited.