MARTIN *v.* GRAY.

4-4565

Opinion delivered October 26, 1936.

*W. O. Edmondson* and *Williamson & Williamson,* for appellant.

*Dene H. Coleman,* for appellee.

JOHNSON, C. J. Appellant, D. S. Martin, and appellee, John H. Gray, were rival candidates for nomination to the office of county judge of Stone county in the democratic primary on August 11, 1936. A certificate of nomination was awarded appellee by the election officials and appellant instituted this contest proceeding.

The complaint alleged as grounds for contest that the sheriff and collector of Stone county on June 20, 1936, unlawfully issued and subsequently unlawfully delivered 72 poll tax receipts to various parties, residents of said county, naming them, who unlawfully and without right participated in said primary and voted for appellee; and that the county central committee of said county unlawfully canvassed and counted for appellee five absentee ballots. It was then alleged that if these spurious ballots were thrown out appellant would have a majority of the legal votes cast in said primary and, therefore, entitled to the certificate of nomination.

Upon trial of issues joined and long subsequent to the 10 days period allowed for instituting contest proceedings it was ascertained that a large number of voters in Stone county had failed and neglected to sign the duplicate ballots cast by them and appellant unavailingly sought to take advantage of this as an additional ground of contest.

The trial court found from the testimony adduced that appellant's contest was without substantial merit and dismissed same from which this appeal comes.

As stated in appellant's brief he urges three reasons upon us for reversal, namely:

"1. That the lower court erred in its finding and holding that the forty-six poll tax receipts issued on June 22, 1936, were legal receipts and entitled the holders thereof to vote in the primary election on August 11, 1936.

"2. That the lower court erred in refusing to throw out the entire vote of Bellmore, Farris and Red River townships for the reason that the duplicate ballots in these townships were not signed by any of the voters.

"3. That the lower court erred in its holding that the five absentee ballots could be legally counted by the central committee on Friday following the election on the previous Tuesday."

The first assigned reason for reversal is grounded upon uncontroverted facts to the effect that the county

collector on June 20, 1936, issued and subsequently delivered to so many people 46 poll tax receipts and did not indorse thereon "this poll tax is issued after June 15," as required by act 123 of 1935, and the holders thereof were permitted to vote by the election officials.

These forty-six poll tax receipts were held valid by the trial court upon the theory that the respective parties paid to the collector the money therefor before midnight of June 15, 1936. This was error. Under the plain mandate of § 4 of act 123 of 1935 these 46 poll tax receipts were ineffectual to and did not entitle the holders thereof to vote in the primary election on August 11, 1936. Said act in definite language provides "and it is also made the duty of all collecting officials in this state to cease issuing poll tax receipts after midnight of the 15th day of June of each year, etc." The word "cease" is defined by Webster's New International Dictionary to mean "to come to an end; to stop; etc.," and moreover, this is its common use and acceptation. One cannot "stop" or "cease" doing a thing and at the same time continue its performance. It follows from this that the poll tax receipts issued and delivered subsequent to midnight, June 15, 1935, were ineffectual to those receiving them as a basis of qualification to vote in the August, 1936, primary. But these views afford appellant no comfort as will hereinafter be shown.

But appellee says that the above conclusion renders act 123 of 1935 in conflict with the Eighth amendment to the Constitution of 1874 in that it deprives a poll tax holder of the right to vote. It will be noted that the Eighth amendment expressly recognizes the competency of the legislature to ascertain and determine the time when poll taxes should be paid. Said amendment in part provides: "* * * and who shall exhibit a poll tax receipt or other evidence that they have paid their poll taxes *at the time of collecting taxes next preceding such election.*"

The language quoted, "at the time of collecting taxes," relates to the time determined by legislative enactment when such taxes must be paid. If the legisla-

ture may determine the time when poll taxes must be paid it may likewise determine as it has done in act 123 of 1935, what must be done to accomplish such payment. By the act referred to "payment of a poll tax" is not consummated as a condition of voting thereon until the issuance and delivery of the poll tax receipts prior to midnight of June 15 preceding the election at which it is to be used. We see no conflict between act 123 of 1935 and the Eighth amendment.

Appellee's argument that the collector was overwhelmed with belated poll tax applications on the last day for payment and was unable to perform his official duties in issuing and delivering the receipts is without convincing effect. Viewed from either the collector's or the taxpayer's standpoint the contention is without merit. The taxpayer is given approximately five months by general law in which to procure his poll tax receipt. If the period were extended to 10 months the same argument would be advanced. Procrastination has ever been availed of by the human race. A typical example is narrated in the Biblical parable of the "Wedding Feast." Excuses there were not accepted and the courts should not accept excuses where election laws are deliberately ignored and violated.

Appellant's third assignment of error is to the effect that the five absentee ballots should not have been counted because not canvassed and counted by duly appointed election judges and clerks. Conceding, without deciding, that this contention is meritorious, it is unavailing to appellant. It is admitted in the pleadings that appellee, on the face of the election returns, received 661 votes and that appellant received 627. A committee was appointed by the trial court to ascertain and determine how and for whom all those holding the 46 belated poll tax receipts voted. This committee expressly found and reported to the court that only 27 of the persons who held the alleged illegal receipts voted for appellee. It is admitted that only four of the five absentee voters cast their ballots for appellee; therefore, it appears that in no event did appellee receive the benefit of more than

31 of the alleged illegal votes. When these 31 illegal votes are subtracted from appellee's admitted vote of 661 it leaves him 630 votes which is a majority of all the legal votes cast in said primary.

Appellant's second contention is that the court erred in refusing to cast out the entire vote in Bellmore, Farris and Red River townships because the duplicate ballots were not signed by the respective voters as required by act 123 of 1935. On this contention it must suffice to say that this contention was not urged in the original complaint or the amendments thereto as grounds for contest and we have repeatedly held that amendments setting forth new grounds of contest come too late, if filed subsequent to the 10 days allowed by § 3772, Crawford & Moses' Digest, to file contest proceedings. *Cain* v. *McGregor,* 182 Ark. 633, 32 S. W. (2d) 319; *LaFargue* v. *Waggoner,* 189 Ark. 757, 75 S. W. (2d) 235; *Winton* v. *Irby,* 189 Ark. 906, 75 S. W. (2d) 656; and *Bland* v. *Benton,* 171 Ark. 805, 286 S. W. 976.

In the views heretofore expressed, we are pressed to reverse and remand this cause to afford appellant a second opportunity to find out for whom all those holding illegal poll tax receipts voted. Appellant made the express allegation of fact in his original complaint that the sheriff and collector had unlawfully issued 72 poll tax receipts and that each of the holders thereof had voted for appellee, but he failed to establish this by sufficient proof. The remand of the cause would afford only the opportunity appellant had in the original trial, but failed to avail himself of. This we are unwilling to do.

Other matters are urged upon us for consideration, but the merits of this litigation are decided by the contentions considered and anything else we might say would be mere *dictum* and out of place in this opinion.

No prejudicial error appearing, the judgment is affirmed.